IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KYLE OWEN BRENNAN,<br><br>*Defendant*. | Case No. 1:26-MJ-444<br><br>**Filed Under Seal** |

**UNITED STATES' MOTION FOR PRETRIAL DETENTION**

COMES NOW, the United States of America, by and through undersigned counsel, and hereby moves the Court for an order that defendant Kyle Owen Brennan shall be detained pending trial. In 2024, the defendant superimposed [redacted] on the naked body of another identified minor victim, creating morphed child pornography, and uploaded it to his Adobe account. Recent forensic examination of the defendant's iPhone, seized in 2024 pursuant to a state search warrant, revealed additional images and videos of children engaged in sexually explicit conduct, including children as young as toddlers. Ongoing forensic examination of the iPhone has further revealed additional images and videos, apparently created by the defendant, depicting the faces of MV1 and [redacted] morphed with the naked bodies of different females engaged in sex acts. The defendant appears to have successfully hidden his illegal activity through the use of VPNs, the Tor browser, and screen capture, as opposed to downloading.

The defendant cannot overcome the statutory presumption in favor of detention, but even if he could, there are no conditions of release that will reasonably assure the safety of the community. Thus, the defendant should be detained pretrial.

## BACKGROUND

Law enforcement investigation of the defendant began in 2024 when Adobe flagged suspicious uploads in an account belonging to the defendant. *See* Dkt. 2 ¶¶13-16. The files, uploaded on April 7, 2024, contained a morphed image combining the face of a minor girl (later identified as MV1) and the naked body of a different minor girl. *Id.* ¶18. Adobe reported the suspicious uploads to the National Center for Missing and Exploited Children (NCMEC). *Id.* ¶13.

Based on geo-location data provided by Adobe, NCMEC ultimately referred the Adobe CyberTipline Reports to the Warrenton Police Department (WPD), which then opened an investigation. *Id.* ¶19. According to records WPD obtained from Comcast, the IP address used to upload the suspected child pornography files to Adobe was registered to Kyle BRENNAN at an address in Warrenton, Virginia. *Id.* ¶20. WPD forwarded the information and results of their investigation to the Fauquier County Sherriff's Office (FCSO) for further investigation. *Id.*

In July 2024, FCSO identified MV1, who was depicted in the three files uploaded to Adobe, [redacted]. *Id.* ¶21. Investigators interviewed [redacted], who identified MV1 in a sanitized version of one of the three uploaded morphed images. *Id.* On or about July 24, 2024, FCSO executed state search warrants for the defendant's residence and electronic devices. *Id.* ¶22. Among other items seized that day, FCSO seized the defendant's iPhone from his person. *Id.* FCSO conducted a forensic examination of the iPhone and discovered images that appeared to depict CSAM and AI-generated CSAM. The Fauquier County Commonwealth's Attorney's Office did not bring charges, and in October 2026, the case was referred to the FBI (*id.* ¶23).

On November 12, 2026, the Honorable William E. Fitzpatrick authorized a warrant to forensically examine the defendant's iPhone. *Id.* ¶25. The FBI reviewed a forensic extraction of

data from the iPhone, which revealed approximately 88 images and 100 videos that appeared to depict minor girls, including prepubescent girls and toddlers, engaged in sexually explicit conduct. *Id.* ¶26. For example, an image with an MD5 ending in 3d5218 and a source path ending in 0C4549, depicted what appeared to be an adult male's penis attempting to penetrate the vagina of a toddler. *Id.* Another image with an MD5 ending in c6120e and a source path ending in CCFCAB3.pdf depicted what appeared to be a fully nude, pubescent minor girl on a locker bench. *Id.* The girl's wrists and ankles were bound and her mouth was gagged. *Id.* In conducting a keyword search for downloads, the FBI observed an image with an MD5 ending in 4ae860 and a source path ending in 9156ca.jpg depicting what appeared to be a pubescent minor female with her breasts and vagina exposed to the camera. *Id.*

Forensic review of the defendant's iPhone also revealed additional morphed images and videos depicting MV1's face on the body of females engaged in sex acts. In an interview with the FBI, MV1 viewed sanitized versions of some of these images and identified her face in them. In one morphed image, MV1's face appears on the body of a nude pubescent female. The female's genitals are exposed to the camera and covered in what appears to be semen. According to MV1, she was 4 years old in the picture used to create that morphed image. MV1 also identified herself in the Adobe uploaded morphed images flagged in the NCMEC reports. MV1 said she had taken that picture of herself and posted it to her Snapchat private stories. In reviewing Snapchat records on the defendant's iPhone, the FBI found that the only saved private story was one from MV1's Snapchat account.

Among the AI-generated material on the defendant's iPhone were over 300 images depicting the faces of [redacted] on the bodies of

females engaged in sex acts, among other things. Records in the defendant's iPhone show that he subscribed to an AI face-swapping application since at least January 2022.

The defendant's iPhone also contained forensic artifacts showing that he used a VPN and the Tor browser[1] to access files with titles consistent with CSAM. For example, on July 20, 2024, the defendant's iPhone logged his access to a file with the title, "5 year-old girl with her daddy - [redacted][.]" The defendant's iPhone also logged his access to files with the titles, "incest in a young family," "children pedo," "Pedo small," "sleeping small girl sex," "juvenile prostitute super blow job," "made daughter suck his dick," and "baby loves a huge cock," and "daughter jerks off daddy's dick." These files were also accessed in and around July 2024, though the content of the files could not be recovered from the iPhone.

The FBI's review of the defendant's iPhone also revealed approximately 20 PDFs containing screen captures from [redacted], a Russian-based picture sharing website known to law enforcement as a popular platform for sharing CSAM. The PDFs were created between June 2023 and June 2024, and contain a compilation of adult pornography, purported AI CSAM, and images of what appear to be real minors engaged in sexually explicit conduct.

## PROCEDURAL HISTORY

On November 13, 2026, a criminal complaint and arrest warrant were issued for the defendant charging him with transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1). *See* Dkt. 1. On the same day, the defendant made his initial appearance before the Honorable William E. Fitzpatrick. Dkt 8. His preliminary hearing and detention hearing were scheduled for Wednesday, November 18, 2026, before the Honorable Lindsey R. Vaala. *Id.*

[1] The Tor Project describes Tor Browser as a privacy-focused web browser that routes the user's traffic through the Tor network, hiding the user's real IP address and preventing tracking.

## LEGAL FRAMEWORK

Certain offenses provide a statutory presumption in favor of detention, including any "offense involving a minor victim under section . . . 2252A." 18 U.S.C. § 3142(e)(3)(E). Given the nature of the charge in this case, "[s]ubject to rebuttal by [the defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3). The presumption of detention "places 'a limited burden of production [] on the defendant to 'com[e] forward with evidence that he does not pose a danger to the community or a risk of flight.' " *United States v. Davis*, 449 F. Supp. 3d 532, 534 (D. Md. 2020) (internal citations omitted). Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

Indeed, "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (internal citations omitted). "[T]he presumption of dangerousness ... represents Congressional findings that certain offenders ... are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir.1986).

If the defendant rebuts the presumption in favor of detention, the government must prove by clear and convincing evidence that "no conditions other than detention will reasonably assure the safety of any other person and the community." *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005) (unpublished). The factors the court must consider in evaluating release are set forth in 18 U.S.C. § 3142(g) and include:

1) the nature and circumstances of the offense charged;

2) the weight of the evidence against the person;

3) the history and characteristics of the person; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

For the reasons that follow, the court should find that the defendant cannot rebut the presumption against release, but even if he could do so, there are no conditions other than detention that will reasonably assure the safety of any other person and the community.

## ARGUMENT

### I. The defendant cannot rebut the presumption in favor of detention.

The defendant used the Internet to obtain child sexual abuse material and then used AI tools and Adobe to create morphed images of [redacted] on the naked body of an identified minor girl. In addition, he appears to have used sophisticated means, including VPNs, the Tor browser, as well as screen capture, to access CSAM and evade law enforcement detection.

Even with third party custodians, location monitoring, and computer monitoring, the defendant presents a danger to the community. For one thing, secret cell phones are cheap and easy to acquire. And computer monitoring software only works when pretrial knows about an electronic device. The defendant could easily obtain a secret cell phone and continue to engage in harmful criminal activity. Looking just at cases in this division handled by undersigned counsel, there are numerous examples of defendants either on pretrial release or supervision who obtain secret cell phones and violate the terms of their release or even engage in new criminal activity. *See e.g.*, *U.S. v. Conor Brian Fitzpatrick*, 1:23-cr-119 (obtained a secret cell phone on pretrial

release, used VPN services to communicate online, and encouraged an individual to become a foreign asset and sell government secrets); *U.S. v. Andrew Skahen*, 1:22-cr-206 (while on pretrial release for CSAM offenses, used a smart TV with Internet access to search for pornography); *U.S. v. Johnny Duran*, 1:25-cr-226 (obtained a secret cell phone while on supervision for CSAM offenses and used it to collect CSAM and attempt to arrange for sex with a minor). There are also plenty of examples of offenders who continue to traffic CSAM even after encounters with law enforcement. *See e.g., U.S. v. Timothy Ball*, 1:24-cr-208 (continued to possess CSAM after his phone was border searched and HSI found CSAM); *U.S. v. Angel Giovanni Torres*, 1:24-cr-54 (used an encrypted messaging platform on his computer to download CSAM after his cell phone was border searched and HSI found CSAM); *U.S. v. Edmund Balzer*, 1:24-cr-194 (received CSAM online after the U.S. Secret Service searched his home for CSAM evidence and seized his devices).

But even if the defendant did not obtain a secret unmonitored cell phone, computer monitoring software does not guarantee the safety of the community. Monitoring software only works insofar as it alerts pretrial to a violation that has already occurred. At that point, the damage to the victim is done. *See United States v. Abdullahu*, 488 F. Supp. 2d 433, 444 (D.N.J. 2007) ("electronic monitoring and home confinement do not guarantee that [a] defendant will not ... endanger the community."). The impact of CSAM trafficking on victims has long been recognized. *See Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come."); *United States v. Accardi*, 669 F.3d 340, 345 (D.C. Cir. 2012) ("[C]hild pornography creates an indelible record of the children's participation in a traumatizing activity, and the harm to the child is only exacerbated by the circulation of the materials."). If the defendant ignored or attempted to

evade monitoring software and engaged in CSAM trafficking, the harm to the victims would be tremendous and computer monitoring software would do nothing to diminish it.

Indeed, "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note); *accord United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) (citing *New York v. Ferber*, 458 U.S. 747, 759 (1982)) (recognizing that "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters"). These children "must live with the knowledge that adults like [the defendant] can pull out a picture or watch a video that has recorded the abuse of [them] at any time," and they "suffer a direct and primary emotional harm when another person possesses, receives or distributes the material." *Sherman*, 268 F.3d at 547-48.

Here, any showing of strong community ties, a substantial bond, potential third party custodians, or even electronic monitoring cannot rebut the presumption of dangerousness. It is simply not possible to monitor someone 24 hours a day outside of a jail; this is equally true for the defendant's parents, no matter how well-intentioned they are. Indeed, the defendant committed the instant offense while he lived with his unsuspecting wife and children. He has proven capable of living a multi-faceted life, keeping the illegal conduct separate and hidden from the rest.

Accordingly, the defendant cannot rebut the presumption against release and should be detained pending trial.

**II. Even if the defendant can rebut the presumption, the Section 3142(g) factors weigh strongly in favor of detention.**

In consideration of the 18 U.S.C. § 3142(g) factors, there are no conditions other than detention that will reasonably assure the safety of any other person and the community.

Nature and circumstances of the offense. The evidence shows that the defendant obtained images and videos of children, including prepubescent children, engaged in sexually explicit conduct. The defendant used the CSAM he obtained to create morphed images, [redacted] on the naked bodies of other children and possibly adults. The defendant attempted to conceal his conduct by using a VPN and the Tor browser and creating screen captures, rather than downloading. The defendant was involved in the offense conduct right up until his iPhone was seized by local law enforcement. The circumstances surrounding the charged offense do not paint a picture of isolated behavior, and therefore favor detention.

Nature and seriousness of danger to the public. The allegations against the defendant are crimes Congress specifically set apart as so dangerous that they require the presumption of detention. The defendant used seemingly innocent pictures of a minor girl – [redacted] – to create child pornography. This is an added layer of concern in an already concerning case involving access to CSAM through intentionally evasive means, and it weighs heavily in favor of detention. *See United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (observing that "[d]etaining adults who prey on children for the adult's sexual gratification ... is [ ] a legitimate government objective" justifying pretrial detention and "[o]ne of the fundamental duties of government is public safety, including protecting children from sexual predators."); *see also Ferber*, 458 U.S. at 759 (noting, in regard to child pornography, that "the materials produced are a permanent record of the children's participation and the harm to

the child is exacerbated by their circulation"); *United States v. Mobasseri*, No. 1:17CR138, 2020 WL 3026070, at *3 (N.D. Ohio June 5, 2020) ("Each download and view of a child-pornographic image or film exacerbates the harm to the child involved in its production."); *United States v. Downs*, 406 F. Supp. 3d 1314, 1321 (N.D. Fla. 2019) ("In light of the probability of harm being inflicted and the magnitude of the likely harm, society has a 'strong interest in preventing the sexual exploitation of children.' " (quoting *United States v. Stokes*, 726 F.3d 880, 893 (7th Cir. 2013))); *United States v. Baker*, 672 F. Supp. 2d 771, 773 (E.D. Tex. 2009) ("Child pornography fosters the exploitation of innocent and vulnerable children all over the world. It causes irreparable harm to some of the weakest members of our society."); *Renteria v. Shingle Springs Band of Miwok Indians*, No. 2:16-CV-1685, 2016 WL 4000984, at *3 (E.D. Cal. July 26, 2016) (citation omitted) ("The sexual exploitation of children is not only morally repugnant, but results in long-lasting and serious harm for the rest of their lives."). Thus, at their core, the defendant's offenses are inherently dangerous. *See* 18 U.S.C. §§ 3142(f)(1)(A), 3156(a)(4)(C) (including in the definition of "crime of violence" "any felony under chapter . . . 110."); 18 U.S.C. § 2252A (a chapter 110 felony offense).

*Weight of the evidence.* The weight of the evidence is extremely strong. The morphed images were uploaded to an Adobe account registered to the defendant and accessed from the defendant's IP address. The iPhone seized from the defendant's person, and which clearly belongs to the defendant, contains at least 88 images and 100 videos depicting minors engaged in sexually explicit conduct. This factor weighs strongly in favor of detention.

*History and characteristics.* The defendant has a history of concealing his illegal conduct and therefore poses a risk to the community. He resided with his wife, [redacted] and other children at the time of his offense conduct and successfully hid his illegal activity from those closest to him.

In addition, [redacted], the defendant persisted in this illegal and harmful conduct.

The defendant's illegal conduct is extremely serious and involved multiple victims. He will be a danger to the safety of others and the community if released, no matter how strict the conditions. Accordingly, the government respectfully requests that the Court order the defendant be detained pending trial.

Respectfully submitted,

Todd W. Blanche
Attorney General

Theophani K. Stamos
First Assistant United States Attorney

By: /s/

Lauren Halper
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, Virginia 22314
Phone: 703-299-3700
Email: Lauren.Halper@usdoj.gov